### UNITED STATES ex rel. and to Use of TENNESSEE VALLEY AUTHORITY v. WILLIAMS et al.

Civil Action No. 379.

District Court, M. D. Tennessee, Nashville Division.

Aug. 18, 1944.

H. James Hitching, Asst. Gen. Counsel, T.V.A., of Chattanooga, Tenn., for petitioner.

H. B. Stout, of Clarksville, Tenn., for landowners.

DAVIES, District Judge.

This cause came on to be heard upon the motion of the petitioner, Tennessee Valley Authority, to vacate the appointment of Commissioners Simpson and Walter, who have heretofore been appointed by the Court as commissioners in condemnation proceedings instituted by petitioner, said Commissioner Simpson having been appointed to serve in condemnation proceedings as to lands lying in Stewart and Houston Counties, and said Commissioner Walter having been appointed to serve in condemnation proceedings as to lands lying in Stewart, Houston and Humphreys Counties.

The commissioners entered no appearance at the hearing either in person or by counsel, and the cause was heard ex parte on affidavits filed by movant, statements of counsel in open court, and facts within the knowledge of the Court.

That portion of the Tennessee Valley Authority Act providing for the appointment of commissioners for the purpose of ascertaining the value of property condemned provides as follows:

"Upon the filing of a petition for condemnation and for the purpose of ascertaining the value of the property to be acquired, and assessing the compensation to be paid, the court shall appoint three commissioners who shall be disinterested persons and who shall take and subscribe an oath that they do not own any lands, or interest or easement in any lands, which it may be desirable for the United States to acquire in the furtherance of said project, and such commissioners shall not be selected from the locality wherein the land sought to be condemned lies." 16 U.S.C.A. § 831x.

Upon the filing of the petition in this cause, the Court, in accordance with the provisions of the Act, appointed as commissioners to ascertain the value of the property to be acquired in the proceeding, and to assess the compensation to be paid, Honorable William M. Leech, a resident of Dickson County, Tennessee, Honorable L. C. Simpson, a resident of Houston County, Tennessee, and Honorable Ed Walter, a resident of Stewart County, Tennessee. The particular land condemned in this proceeding lies in Stewart County, Tennessee.

The basis of the objection made to the appointment of Commissioners Simpson and Walter is that the project known as the Kentucky Reservoir, for which the land in question is being condemned, follows the meanders of the Tennessee River, which forms the westerly boundary lines of Stewart, Houston, and Humphreys Counties, located within the Middle District of Tennessee and the jurisdiction of this court. This same project also includes lands in Wayne County, Tennessee, which is also within the jurisdiction of this court but approximately one hundred miles from the county of Stewart. The town of Dover, Tennessee, where Commissioner Walter resides, is located about twelve miles from the Tennessee River, and the town of Erin, Tennessee, where Commissioner Simpson resides, is located about eighteen miles from the Tennessee River. All lands included in the project are immediately adjacent to Tennessee River. It is the theory of petitioner that the project, which requires the condemnation of lands in the counties of Stewart, Houston, and Humphreys, should be considered, in construing the terms and provisions of the statute, as a single locality, and that a commissioner appointed from either one of these counties would be considered to be from the locality wherein the land sought to be condemned lies, and, therefore, is disqualified under the Act. No other objection has been raised to the appointment of Commissioners Simpson and Walter, as it is admitted that they do not own any lands which it may be desirable for the United States to acquire in the furtherance of said project; and it is further admitted that said commissioners are disinterested and well qualified to perform their duties, and that no question has or can be made as to their integrity. No question has been made as to the appointment of Commissioner Leech, as he is not a resident of either Stewart, Houston, or Humphreys Counties.

The term "locality" is susceptible to a large number of legal definitions and indefinite meanings. It has at different times, under certain circumstances, been construed to embrace a neighborhood, a community, one or more civil districts, one or more counties, and even one or more states. It cannot be arbitrarily limited to geographic or civil boundaries. It also cannot be said that by using the word "locality" in the statute in question, Congress intended to limit this disqualifying feature to a resident of any particular county, for a situation could well, and does, exist where residents of the county of Hickman, immediately adjacent to the county of Humphreys, but in which county no lands are being condemned for the particular project, are, as a matter of fact, geographically closer to lands that are being condemned than some of the residents of either Humphreys, Houston, or Stewart Counties. The Court is of the opinion that Congress, in using the term "locality" in the Act, did not attempt to limit it to county lines, or district lines, or any particular geographical or civil boundary, but that, in construing the Act, the Court should adopt a construction which would best carry out the intent and purpose of the Act. The Court is, therefore, of the opinion that the intent and purpose

of Congress was to prevent the appointment of a commission whose members might have common interests with the landowners and who might be susceptible to local prejudices and influences such as would directly or indirectly influence their official acts, regardless of civil or geographic boundaries.

Applying this broad construction of the term "locality" to the circumstances of this particular situation, it does not necessarily follow that a commissioner appointed from the county of Stewart, having friends and associates among landowners in that county and might thereby be subjected to local prejudices and influences, could necessarily be said to be subjected to these same influences in the condemnation of lands in another county forty or fifty miles distant, where he did not know the landowners, for the sole reason that the condemned lands constituted a part of the same project.

■ Furthermore, the Act contemplates the condemnation of each tract of land separately and requires the commission to make a separate award for each separate parcel involved. The prohibition in the Act relates to the locality wherein the land sought to be condemned lies and not the locality wherein the project lies. In respect to other required qualifications of the commissioners, they must subscribe to an oath that they do not own any lands to be acquired in the furtherance of the project. If Congress had meant to prohibit the appointment of commissioners from the locality of the project as a whole, it would have so provided in the Act, as it did in connection with other qualifications of the commissioners. Or, if it had so desired, Congress could have specifically prohibited the appointment of commissioners from the county wherein the land sought to be condemned lies. But this would not have been sufficient to provide for the safeguard Congress meant to establish in the condemnation of these lands, for a situation could easily be supposed in the condemnation of a tract of land immediately adjacent to the boundary line between two counties where a commission of neighbors and friends of the landowners could be appointed from the adjoining county who would be more susceptible to local influences and prejudices in the condemnation of the particular tract of land than residents of the same county of the landowner. On the other hand, it could hardly be said that a resident of the county of Wayne, more than one hundred

miles from the land being condemned in Stewart County, would be disqualified merely because land is being condemned for this same project in that county, and, therefore, the commissioner would be considered to be from the locality where the land being condemned lies.

■ The Court does not construe the statute as in any manner prohibiting the appointment of a commission from the same county wherein the land being condemned lies, so long as they are not from the locality of the condemned premises, whereby they might be subject to local prejudices and influences. It might be that in a small county commissioners would be more likely to be subjected to local influences and prejudices, and then again, it might not be.

It will be noticed that the Act speaks in the plural, saying that such "commissioners" shall not be selected from the locality wherein the land sought to be condemned lies. The Court is of the opinion that by this language, the Congress meant that the Court should not appoint a commission of three persons who were neighbors, friends and associates, or who, by reason of their residence, might be subjected to local influences and prejudices existing near or in relation to certain properties being condemned, or the owners thereof. The Court does not construe the Act to prevent the appointment of a person, otherwise well qualified, solely because he is a resident of the county wherein any part of the land lies.

When the first condemnation proceedings were filed in connection with the project in question, this particular matter of the appointment of commissioners was discussed by the Court with counsel for the Authority. The term "locality," as used in the Act, had not at that time, and has not since, been construed by any court of competent jurisdiction, and there was no definite rule for the guidance of the Court in the construction of this language and the appointment of commissioners. Counsel for the Authority admitted their inability to advise the Court definitely, saying that they were doubtful of the meaning of this language. The Court did not then, and does not now, construe the Act as arbitrarily prohibiting the selection of a commissioner from the county wherein the land sought to be condemned lies, and proposed the plan whereby one commissioner would be selected from the county wherein the land to be condemned was located and

the other two commissioners from different counties. Counsel for the Authority requested that one of the commissioners appointed by the Court be a practicing attorney so as to be able to guide the commission in matters of procedure and evidence. The Court, thereupon, with the approval of counsel for the Authority, adopted the plan of appointing one commissioner from each of the counties of Stewart and Houston as to lands condemned in either of those counties, and the third member of the commission was selected from the county of Dickson, particularly because of his ability as a lawyer and his integrity and high standing in the community. A similar plan was evolved for the appointment of a commissioner from Humphreys County (who is not involved in this proceeding) to participate in the condemnation of lands lying in that county, along with one of the other commissioners from either Stewart or Houston County and the commissioner from Dickson County. The Court felt that its action at that time was in full compliance with the spirit and the terms of the statute, and, apparently, was entirely satisfactory with the Authority.

Moreover, this plan for this particular project had been followed, after similar discussions with counsel for the Tennessee Valley Authority, in connection with the condemnation of lands located in the counties of Maury, Giles, Williamson, and Davidson, in relation to different projects since November 6, 1939, and these commissioners have passed on a number of cases without the present objection ever having been raised.

The Court is of the opinion that this plan is especially equitable for this project, inasmuch as it is most desirable to have one member of the commission from the county where the land lies who is familiar with properties and property values in the county for the particular reason that the Authority has entered into the possession of all properties in the project and in the case of farms lying entirely within the boundaries of the reservoir proper, has cut and removed all timber, orchards and buildings, and the commissioners will necessarily have to value the property from an inspection of a denuded area, photographs, and description by witnesses. Personal knowledge on the part of one of the commissioners as to properties and values would therefore seem to be of considerable value to the commission.

No question of any kind was ever raised by the Authority relative to this plan of procedure under the statute until the Authority became dissatisfied with the award of the two commissioners involved in this proceeding in the case of United States ex rel. T.V.A. v. Annie Mary Tishel Brandon et al., Civ. No. 382,[1] and one of the commissioners involved in this proceeding in the case of United States ex rel. T.V.A. v. Runie Potter Robertson, Civ. No. 278,[1] which has been tacitly admitted by counsel for the Authority to be the reason for the filing of the motions in question. Exceptions to the awards in these cases have been filed by the Authority and the causes are awaiting hearing before the statutory three judge court. The Court, therefore, is not in a position at this time to say whether or not the dissatisfaction evidenced by the Authority as to these awards is justified, but that matter should be immaterial, for the reason that if the Authority can convince the statutory court that the awards are excessive, without doubt they will be reduced.

The Court is still of the opinion that in the appointment of the commissioners in this cause, one from the town of Dover, about twelve miles distant from the land being condemned, and the other two from adjoining county seats, thirty and fifty miles distant, it acted under a correct and proper interpretation of the Act, and under all the facts and circumstances, the method followed in the appointment of the commission does not violate the statutory provision that " * * * such commissioners shall not be selected from the locality wherein the land sought to be condemned lies." The Court feels that the Authority, by reason of having participated in and agreeing to the plan for the appointment of the various commissions, and having abided by same since 1939 without raising any question as to its legality until it became dissatisfied with an award made by this particular commission, should not now seek to have the appointment of two of the commissioners vacated solely on a highly technical ground involving the obscure legal definition of the word "locality."

For all these reasons, the motions to vacate the appointment of the commissioners on the grounds specified are denied.

---

[1] No opinion.

■ The Court, however, on its own motion, takes notice of another matter contained in an affidavit filed in support of the above motions which sets out that on February 28, 1944, Commissioner Simpson entered into an oral agreement with Mr. I. L. Treat, of the Construction and Maintenance Division of the Authority, under which Commissioner Simpson and Mr. Rye would sell to the Authority a small tug boat, a barge, and equipment thereon, for the sum of $500. The offer contained a provision that the money should be paid within ten days. Possession of the property was delivered to the Authority. The money was not paid within ten days, and Commissioner Simpson rescinded the sale and demanded return of his property, which was delivered to him. Subsequently, Commissioner Simpson billed the Authority for the amount of $240, representing twelve days' use of the property at the rate of $20 per day. The claim was denied by the Authority and Mr. Simpson has employed counsel and threatened suit.

The Court is of the opinion that commissioners appointed under the authority of the statute to pass upon the value of properties condemned by the Authority occupy a quasi-judicial position, and that a commissioner should be very circumspect as to any out of the ordinary business dealings he may have with the Authority or any landowner whose property is being condemned. The Court is satisfied that the equipment sold in this case was worth the money to be paid, and the Court finds that there was no ulterior motive involved either on the part of the commissioner or the Authority in this transaction. However, the net result of it is that the incident has, in all probabilities, engendered a feeling of animosity on the part of both the commissioner and officials of the Authority. With such a situation existing, the Court feels that the atmosphere of any further hearings in which Commissioner Simpson would participate will probably be permeated by a feeling of antagonism which will not be conducive to the calm and judicial consideration of matters involving the interests of the Authority upon which the commissioner will have to pass in a quasi-judicial capacity. It is rather difficult to visualize a commissioner passing upon the rights of a party with calm, fair and impartial consideration on one hand, and on the other hand, threatening to bring suit against the same party for a money judgment over a litigated matter.

For these reasons, the Court feels that the further fair and equitable administration of the duties of the commission in condemnation of lands by the Authority requires the Court to vacate the appointment of Mr. Simpson. However, the Authority is equally responsible for this situation, and it seems of doubtful propriety for the Authority to have out of the ordinary business dealings with any of the commissioners appointed in condemnation proceedings under the Act. Such matters could very easily create an unfavorable impression on landowners whose property is being condemned. Honorable W. H. Jones, of Humphreys County, Tennessee, is appointed commissioner in this cause to serve in the place and stead of Mr. Simpson.

Judgment will be entered accordingly.